# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 23, 2013 at Knoxville

## SHELVY BAKER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-A-112      Cheryl A. Blackburn, Judge**

_____

**No. M2012-01559-CCA-R3-PC - Filed August 28, 2013**

_____

The Petitioner, Shelvy Baker, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his conviction of second degree murder and resulting twenty-five-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Charles E. Walker, Nashville, Tennessee, for the appellant, Shelvy Baker.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that in January 2002, the Davidson County Grand Jury indicted the Petitioner for first degree premeditated murder. Relevant to this appeal, we glean the following facts from this court's opinion of the Petitioner's direct appeal of his conviction: About 8:20 p.m. on July 14, 1999, someone shot and killed the victim, Terrance Wilkins, in the parking lot of the Barcelona Apartments. State v. Shelvy A. Baker, No. M2005-00298-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 707, at **1-2 (Nashville, Sept. 14, 2006). At trial, two witnesses testified that they saw the Petitioner shoot the victim, and

one witness claimed that the Petitioner confessed to the shooting. Id. at *22. During a recorded telephone conversation with his mother, the Petitioner admitted to her that he was guilty of a murder. Id. at *23. Several of the Petitioner's family members tried to establish an alibi for the Petitioner. Id. For example, Autumn Norman, the Petitioner's cousin, testified that when she got home from school on the afternoon of the shooting, the Petitioner was there and never went anywhere. Id. at *10. Marsha Hallum, the Petitioner's aunt, testified that she got home between 8:30 and 9:00 p.m. on the night of the shooting and saw police cars at the nearby Barcelona Apartments. Id. at **10-11. When she went to bed at 9:30 p.m., the Petitioner was at her home. Id. at *11. The jury rejected the Petitioner's alibi defense and convicted him of second degree murder. See id. at *1. After a sentencing hearing, the trial court sentenced him to twenty-five years in confinement. Id.

On appeal to this court, the Petitioner argued that the trial court erred by refusing to dismiss the indictment due to the State's delay in presenting the case to the grand jury and that the evidence was insufficient to support the conviction. Id. at **14, 21. This court affirmed the Petitioner's conviction. Id. at *23. After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely petition for post-conviction relief, raising several issues, including that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed an amended petition, claiming that the Petitioner received the ineffective assistance of counsel because trial counsel (1) incorrectly advised him that if he went to trial in the instant case, the trial court would grant him post-conviction relief for a previous conviction and (2) failed to interview alibi witnesses adequately and prepare them for trial.

At the evidentiary hearing, the Petitioner testified that at the time he was charged with killing the victim, he had pending a petition for post-conviction relief in another case. The Petitioner had pled guilty in that case, which he referred to as the "Waffle House case." Trial counsel was appointed to represent the Petitioner in the instant case and filed a motion to dismiss the indictment for a due process violation. Trial counsel told the Petitioner that counsel had made an agreement with the State. According to the agreement, the petition for post-conviction relief in the Waffle House case would be granted if the Petitioner would proceed to trial in this case. The Petitioner went to trial in this case, but the trial court denied his post-conviction petition. The Petitioner said that counsel gave him erroneous advice, "telling me something that wasn't happening."

Marsha Hallum testified that she was a witness for the Petitioner at trial. The day before her trial testimony, Hallum met with trial counsel for two or three minutes. However, he did not tell her what she was going to testify about.

On cross-examination, Hallum testified that she did not think she ever met with

defense counsel's investigator. Hallum said that she knew when she arrived at the Petitioner's trial that she would be testifying for him but that she "didn't know what [she] had to say or what was going to be asked." The State asked her, "Well, if you had known, would your testimony have been any different?" Hallum answered, "No." Upon being questioned by the post-conviction court, Hallum acknowledged that she testified that the Petitioner was at her home when she went to bed at 9:30 p.m. She also acknowledged that she testified truthfully. She said she did not know what else she would have said for the Petitioner.

Autumn Norman testified that she also testified for the Petitioner at trial. Norman never spoke with trial counsel before her testimony, and no one told her what her testimony would involve. Norman had no idea what questions she was going to be asked.

On cross-examination, Norman testified that she knew she needed to go to the Petitioner's trial because her mother told her. She stated, "I knew that it was concerning my cousin, but I didn't know, you know, what I was coming for." Norman said that she never saw defense counsel's investigator and that "it would have been nice to at least I guess known kind of what was going on to even try to remember some things." Upon being questioned by the post-conviction court, Norman said that she testified at trial that she left summer school about 1:00 p.m. on the day of the shooting. When she got home, the Petitioner was there. She said she did not remember his leaving her house prior to the shooting. Norman acknowledged that she told the jury the Petitioner did not leave her home.

Trial counsel testified for the State that he became licensed to practice law in 1975, that about ninety-eight percent of his work involved criminal defense, and that he had tried twenty to twenty-five murder cases. The Petitioner had filed a post-conviction petition in the Waffle House case and was confident that he was going to receive post-conviction relief. Counsel said that "because of that he wanted to go to trial in this case because he was confident he would be found not guilty. And he didn't want to agree to a sentence when he truly believed he was going to prevail and have that other sentence knocked out." Counsel said he did not remember having a conversation with the Petitioner in which he predicted the Petitioner's success on the post-conviction case. In fact, counsel usually told his clients that success on post-conviction was "very rare." Counsel said that he asked the assistant district attorney for a plea offer in this case but that the Petitioner said, "I'm not interested, I'm not pleading to anything because I'm not guilty in this case and I'm going to win my post[-]conviction and go home." Counsel said he did not think the State could even agree to grant a post-conviction petition.

Trial counsel testified that he used Patrick Wells, a licenced private investigator, for "many, many cases." Counsel said that Wells would interview every witness, especially alibi

witnesses, listed on an indictment or named by a client, and provide counsel with a report. Counsel looked for the reports provided by Wells in this case, but the case was too old for counsel to find them. Counsel said, "I want to say in this case that . . . on at least one occasion we set a time for these witnesses to come to the office. And the lady that just testified, . . . she never came." Counsel said that he was "always careful" with alibi witnesses and would tell them "here is when the offense was supposed to have occurred, . . . what if anything do you know about this. Because I don't want to be in a position to look like I'm feeding testimony."

On cross-examination, trial counsel testified that he may have had conversations with the Petitioner's post-conviction counsel about the Waffle House case. Trial counsel filed a motion to dismiss the indictment in this case due to the State's delay in presenting the case to the grand jury. At the motion hearing, counsel argued that the Petitioner was prejudiced by the delay because he "lost the possibility of having these two -- essentially life sentences . . . . running concurrent with each other. And [the State] had conceded that in cases like this sometimes that's agreed to." However, the trial court ended up ordering that the sentence in this case run concurrently with the life sentence in the Waffle House case. Therefore, counsel's prejudice argument became "moot." Counsel said he did not tell the Petitioner that the Petitioner would receive post-conviction relief if he went to trial in this case. Counsel explained,

> [H]e was always confident in his mind that he was going to win his post-conviction in the first case. And because of that that sentence was going to go away. And he thought he was going to win this one because of his alibi witnesses. And in his mind he was never going to have to go to prison.

Counsel testified that he gave a notice of alibi in this case, meaning that either he or Wells spoke with the Petitioner's alibi witnesses. Thus, there was no way the alibi witnesses could have come to court not knowing why they were there to testify. Upon questioning by the post-conviction court, counsel acknowledged that he called numerous witnesses to testify for the Petitioner at trial and that most of them testified that the Petitioner was at home at the time of the shooting. However, counsel also acknowledged that the Petitioner's telling his mother that he killed someone was "problematic" for the defense.

The Petitioner testified on rebuttal that at the time of his guilty plea in the Waffle House case, the State knew about his involvement with this case. However, the State did not charge him with killing the victim until after his guilty plea in the Waffle House case, which deprived him of his opportunity to plead guilty in both cases at the same time. Counsel filed the motion to dismiss the indictment in this case and advised the Petitioner of three available

remedies: (1) dismissal of the indictment, (2) sentencing the Petitioner concurrently with the Waffle House sentence, or (3) going to trial in this case and having his post-conviction petition granted in the Waffle House case. The Petitioner said that the trial court refused to dismiss the indictment and that concurrent sentencing "[made] no logical sense when a man is doing a life sentence to have a twenty-five-year sentence ran into a life sentence. So why would I want concurrent time?" He stated that the only sensible remedy was to grant his petition for post-conviction relief. He explained that "the reason . . . I was so confident was because the State said in the motion to dismiss that that would be an option, that would be something they would consider. With the other two options that are not valid then what is there to consider?"

In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding the Petitioner's claim that counsel was ineffective for advising him to go to trial so that the trial court would grant his petition for post-conviction relief in the Waffle House case, the court accredited trial counsel's testimony that he did not give such advice to the Petitioner. Regarding counsel's failure to interview and prepare alibi witnesses for trial, the post-conviction court again accredited counsel's testimony that it was his practice for a private investigator to speak with alibi witnesses before counsel filed a notice of alibi. The court also noted that at the evidentiary hearing, Hallum and Norman testified that their trial testimony was truthful and that they had nothing to add to their trial testimony. Thus, the court concluded that the Petitioner failed to show that counsel rendered deficient performance or that he was prejudiced by any deficiency.

## II. Analysis

On appeal, the Petitioner maintains that he received the ineffective assistance of counsel because trial counsel incorrectly advised him that the trial court would grant his petition for post-conviction relief in the Waffle House case if he went to trial in the instant case and because counsel failed to interview alibi witnesses adequately and prepare them for trial. The State argues that the post-conviction court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved

by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the instant case, the post-conviction court specifically accredited trial counsel's testimony that he did not tell the Petitioner that the post-conviction petition in the Waffle House case would be granted if the Petitioner agreed to go to trial in this case. Regarding counsel's failure to interview and prepare alibi witnesses for trial, the trial court again accredited counsel's testimony that Wells would have interviewed the alibi witnesses prior to counsel's filing the notice of alibi. Nothing preponderates against the post-conviction court's findings. Like the post-conviction court, we note that Hallum and Norman added nothing to their trial testimony at the evidentiary hearing. Thus, we agree with the post-conviction court that the Petitioner has failed to demonstrate that counsel rendered

-6-

deficient performance or that he was prejudiced by any deficiency.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE